UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL J. SCARIANO, INC.

                      Plaintiff,

-against-

TCP-SECURITY SOLUTIONS, INC.

                      Defendant.

Civil Action No.

**COMPLAINT**

---

Plaintiff Paul J. Scariano, Inc. ("PJS"), by its attorneys, Baker & Hostetler LLP, as and for its Complaint against Defendant TCP-Security Solutions ("TCP-SS") alleges:

### NATURE OF THE ACTION

1. PJS brings this action to recover damages caused by TCP-SS's failure and continuing refusal to deliver certain products fully paid for and demanded by PJS, and for TCP-SS's wrongful retention of funds given as a deposit for additional products that were never due to be manufactured under the parties' agreement. Pursuant to a purchase order and agreement entered into by the parties, PJS ordered, and TCP-SS agreed to supply, among other things, planters and LED marker lamps for installation and use at the Jacob Javits Convention Center site. Although TCP-SS accepted PJS's full payment of $730,394.06 for such materials, and despite PJS's repeated demands for delivery of those products, TCP-SS has refused to deliver the planters or LED marker lamps to PJS. In addition, TCP-SS has wrongfully indicated its intent to keep and not return $152,175.80 in deposits paid by PJS for a handrail and certain benches that were never authorized for manufacture and which deposits are due to be returned to PJS pursuant to the parties' agreement. Accordingly, PJS seeks to recover the damages and fees incurred as a result of TCP-

SS's willful breach of the parties' agreement, including any amounts paid to TCP-SS for the products not delivered, any additional amounts expended by PJS to complete or replace TCP-SS's performance under the parties' agreement and PJS's reasonable attorneys' fees.

## **PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff PJS is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 12 Potter Avenue, New Rochelle, New York.

3. Upon information and belief, Defendant TCP-SS is a corporation organized and existing under the laws of the state of Florida, with its principal place of business located at 5514 Carmack Road, Tampa, Florida. Alternatively, TCP-SS also uses an address at 1843 Collier Parkway, Landolakes, Florida.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of New York and Florida and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2),(3) because this dispute arises out of TCP-SS's failure to perform its obligations under the Purchase Order (as defined below), and, pursuant to the Purchase Order, PJS and TCP-SS agreed that disputes arising out of the Purchase Order would be litigated before the state or federal courts located in New York.

## **FACTS**

6. PJS and TCP-SS entered into a binding agreement embodied in Purchase Order No. 277G-PO-014, dated August 28, 2019 (the "Purchase Order"), by which PJS agreed to buy from TCP-SS, and TCP-SS agreed to sell to PJS, certain products and materials for use in

connection with a project for the Jacob Javits Convention Center. A true and correct copy of the Purchase Order is attached hereto as **Exhibit A** and is incorporated by reference herein.

7. Among the products and materials included in the Purchase Order were (i) thirty-seven (37) Securiscape small planters (the "Planters") at a price of $9,205.55 per unit, for a total price of $340,605.35, and (ii) thirty-seven (37) shallow mount LED Bollards and Sleeves (the "LED Bollards") at a price of $10,534.83 per unit, for a total price of $389,788.71.

8. PJS has made full payment to TCP-SS for the Planters and LED Bollards.

9. Specifically, with regard to the Planters, PJS made a 50% payment of $170,302.68 to TCP-SS as part of a payment by check that was deposited by TCP-SS on October 15, 2019; and PJS made the remaining 50% payment of $170,302.67 as part of a wire received by TCP-SS on June 12, 2020.

10. PJS made and TCP-SS received and deposited payments attributable to the purchase and sale of the LED Bollards of $194,894.36 on October 15, 2019; $83,119.80 on March 31, 2020; and $117,774.55 on June 12, 2020.

11. Pursuant to the Purchase Order, the Planters and LED Bollards were due to be delivered to PJS by TCP-SS upon payment by PJS.

12. The LED Bollards each consist of three parts: a core component, a sleeve and a LED marker head lamp (the "LED Marker Lamp"). TCP-SS has made delivery of the bollard core components and sleeves, but has refused and failed to deliver the LED Maker Lamps and the Planters. Without the LED Maker Lamps, the LED Bollards are of no value and cannot be used or installed as contemplated by the Purchase Order.

13. Upon information and belief, TCP-SS is in possession of the Planters and LED Marker Lamps or, in the alternative, has the ability to procure the Planters and LED Marker Lamps for delivery to PJS.

14. By letters dated August 31, 2020 and October 7, 2020, PJS demanded delivery of the Planters and LED Marker Lamps by TCP-SS.

15. TCP-SS has refused or otherwise failed to make delivery of the Planters and LED Marker Lamps.

16. In addition to the Planters and LED Marker Lamps, the Purchase Order also included one (1) handrail at a purchase price of $2,000 and eighteen (18) shallow mount benches (, the "Benches") at a price of $11,124.13 per unit, for a total price of $202,234.34.

17. Pursuant to the Purchase Order, PJS gave TCP-SS deposits totaling $152,175.80 for the handrail and Benches.

18. However, the terms of the Purchase Order explicitly state that TCP-SS was not to "order, manufacture, fabricate, or otherwise prepare any items on this purchase order until specifically directed by PJS."

19. The mechanical shop drawings or plans for the handrail and Benches were never approved, and PJS never gave direction to TCP-SS for the handrail or Benches to be ordered, manufactured, fabricated or otherwise prepared.

20. An email dated May 28, 2020 from TCP-SS to PJS acknowledged that the Benches were being "scrapped" and thus deleted from the Purchase Order.

21. Despite the terms of the Purchase Order and despite the fact that PJS never gave TCP-SS direction to proceed with the handrail or Benches, TCP-SS has sent PJS an invoice

indicating its intent to keep the deposits for the handrail and Benches and demanding payment of an additional $100,117.17.

22. As a result of the foregoing, PJS has suffered, and continues to suffer damages in an amount to be determined at trial, but not less than $882,569.86, representing the amount PJS paid to TCP-SS for the Planters and LED Bollards and the refundable deposits paid by PJS for the handrail and Benches, plus any additional costs and expenses incurred by PJS to complete TCP-SS's performance under the Purchase Order.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract—Failure to Deliver Planters and LED Marker Lamps)

23. PJS repeats and realleges the allegations in paragraphs 1 through 22 as if fully set forth herein.

24. PJS and TPC-SS entered into a valid, binding contract embodied in the Purchase Order, which is supported by adequate consideration.

25. PJS has performed all of the obligations of the Purchase Order to be performed on its part relating to the Planters and LED Marker Lamps, including having made payment in full for those items.

26. TCP-SS has refused and failed to deliver the Planters and LED Marker Lamps to PJS.

27. TCP-SS's actions constitute a material breach of the Purchase Order.

28. As a result of the foregoing, PJS has suffered damages for which TCP-SS is liable in an amount to be determined at trial, but not less than $730,394.06.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract—Wrongful Retention of Deposits for Benches)

29. PJS repeats and realleges the allegations in paragraphs 1 through 28 as if fully set forth herein.

30. PJS and TPC-SS entered into a valid, binding contract embodied in the Purchase Order, which is supported by adequate consideration.

31. PJS performed all of the obligations of the Purchase Order to be performed on its part relating to the handrail and Benches, including the payment of refundable deposits totaling $152,175.80.

32. Contrary to the terms of the Purchase Order, and despite the fact that PJS never gave TCP-SS direction to proceed with regard to the handrail or Benches, TCP-SS has wrongfully indicated its intent to keep the deposits paid by PJS for the handrail and Benches.

33. TCP-SS's actions constitute a material breach of the Purchase Order.

34. As a result of the foregoing, PJS has suffered damages for which TCP-SS is liable in an amount to be determined at trial, but not less than $152,175.80.

### THIRD CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing)

35. PJS repeats and realleges the allegations in paragraphs 1 through 34 as if fully set forth herein.

36. PJS and TPC-SS entered into a valid, binding contract embodied in the Purchase Order, which is supported by adequate consideration and governed by New York law.

37. Every contract governed by New York law has an implied covenant of good faith and fair dealing, such that no party to such contract may act to deprive the other of the benefits and bargains of the agreement.

38. TCP-SS was thus bound by an implied-in-law covenant under the Purchase Order to perform its obligations in good faith and not take any action that might deprive PJS of the benefits of its bargain under the Purchase Order.

39. TCP-SS has acted in bad faith and breached the implied covenant of good faith and fair dealing by, among other things, refusing to deliver products or product components to PJS that are necessary for PJS's use of the products purchased pursuant to the Purchase Order, and by wrongfully retaining and demanding additional payments, all as detailed above.

40. The actions taken by TCP-SS and alleged herein have deprived PJS of the benefits of the Purchase Order, caused substantial damage to PJS, and are inconsistent with the intent of the parties.

41. PJS has suffered damages as a direct and proximate result of TCP-SS's breaches of the implied covenant of good faith and fair dealing in an amount to be proved at trial.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment—Wrongful Retention of Deposit for Benches)**

42. PJS repeats and realleges the allegations in paragraphs 1 through 41 as if fully set forth herein.

43. Pursuant to the Declaratory Judgment Act, this Court has the authority to "declare the rights and other legal relations of any interested party seeking such declaration" in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).

44. TCP-SS has sent to PJS an invoice indicating that it intends to keep PJS's $152,175.80 of deposits for the handrail and Benches, which PJS never gave direction to TCP-SS to order, manufacture, fabricate or otherwise prepare, and demanding an additional payment of $100,117.17 for the Benches.

45. An actual justiciable controversy exists between TCP-SS and PJS regarding the retention by TCP-SS of PJS's $152,175.80 of deposits for the handrail and Benches and TCP-SS's demand for an additional payment of $100,117.17.

46.     TCP-SS's conduct entitles PJS to a declaratory judgment that: (i) TCP-SS must return to PJS its $152,175.80 of deposits for the handrail and Benches; and (ii) PJS does not owe TCP-SS any additional payment for the Benches.

### FIFTH CLAIM FOR RELIEF
(Unjust Enrichment)

47.     PJS repeats and realleges the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48.     TCP-SS has been enriched by benefiting from payments for the Planters, LED Marker Lamps, handrail and Benches to which it was not entitled, at PJS's expense.

49.     Equity and good conscious require that TCP-SS remit back to PJS the amount of payments it has received from PJS for the Planters, LED Marker Lamps, handrail and Benches.

50.     TCP-SS's conduct has directly and proximately caused it to be unjustly enriched at PJS's expense and PJS is entitled to money damages as a result of TCP-SS's conduct in an amount to be determined at trial, but not less than $882,569.86, representing the amount PJS paid to TCP-SS for the Planters, LED Marker Lamps, handrail and Benches.

**WHEREFORE**, PJS prays for relief and judgment as follows:

   a. Awarding PJS damages for TCP-SS's breach of the Purchase Order, in an amount to be determined at trial, but not less than (i) $882,569.86, representing the amount PJS paid to TCP-SS for the Planters, LED Marker Lamps, and Benches; and (ii) any additional amounts incurred by PJS to complete and/or replace TCP-SS's performance;

   b. Entering a declaration as described in paragraph 46;

   c. Awarding PJS attorneys' fees and costs incurred in this action; and

   d. Awarding PJS such other and further relief as may be just, equitable, and proper.

8

Dated:  October 23, 2020
       New York, New York

BAKER & HOSTETLER LLP

By: <u>/s/Benjamin D. Pergament</u>
Benjamin D. Pergament
bpergament@bakerlaw.com
Lauren R. Weinberg
lweinberg@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Tel.: (212) 589-4200

*Attorneys for Plaintiff Paul J. Scariano, Inc.*

9